IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Fady Kassem,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: 1:05-CV-02352 |
| ) | |
| **Washington Hospital Center,** ) | |
| ) | |
| **Defendant.** ) | |

### DEFENDANT WASHINGTON HOSPITAL CENTER'S
### MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Washington Hospital Center ("the Hospital"), through counsel, King Pagano Harrison, respectfully submits this Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

**I.**

**INTRODUCTION**

Both counts of Plaintiff Fady Kassem's ("Plaintiff") two-count Complaint are legally deficient and should be dismissed based on well-settled District of Columbia case law. First, Plaintiff's breach of contract claim should be dismissed because, under prevailing District of Columbia law, Plaintiff's visa application and Bonus Acknowledgment do not, as a matter of law, constitute an enforceable employment contract that would rebut Plaintiff's presumed at-will status. Plaintiff, therefore, cannot proceed with a cause of action for wrongful termination on a breach of contract theory, as a matter of law. Two recent decision of this Court – MacIntosh v. Building Owners and Managers Assoc. Internat'l, 355 F. Supp. 2d 223, 229 (D.D.C. 2005) and

77122

Daisley v. Riggs Bank, N.A., 372 F. Supp. 2d 61, 70 (D.D.C. 2005) – demonstrate that Plaintiff's claims are appropriately dismissed under Rule 12(b)(6). Accordingly, Count I of his Complaint should be dismissed.

Second, Plaintiff's intentional infliction of emotional distress claim merely alleges conduct that is attributable to employer-employee conflicts. Under well-settled District of Columbia case law, including Kerrigan v. Britches of Georgetowne, Inc., 705 A.2d 624, 628 (D.C. 1997) and Thompson v. Jasas Corp., 212 F. Supp. 2d 21, 28 (D.D.C. 2002), such allegations, even if true, fail as a matter of law to rise to the level of the extreme and outrageous conduct necessary to withstand a Rule 12(b)(6) motion to dismiss. Count II of Plaintiff's Complaint, therefore, should also be dismissed.

## II.

## FACTUAL BACKGROUND

Plaintiff was a former hospital employee whose employment was terminated when he illegally injected another hospital employee with nuclear material without the knowledge or approval of a physician. Plaintiff's Complaint alleges one count of breach of contract and one count of intentional infliction of emotional distress based on his termination for involvement in the improper administration and handling of nuclear material. Specifically, the Complaint alleges that after the Hospital discovered that another Nuclear Technologist, Lawrence Dioh, was injected with a nuclear material without the knowledge or approval of a physician in violation of Nuclear Regulatory Commission ("NRC") Regulations, the Hospital "aimed its investigation a [sic] placing all blame on plaintiff." Complaint at ¶ 24.

According to the Complaint, the Hospital "purported to investigate this serious NRC violation, but lost valuable evidence, failed to validate the network to preserve its information,

accepted uncorroborated stories from favored persons, and failed to investigate these violations diligently." Complaint at ¶ 23. Based on the results of this alleged "defective investigation," which concluded that Plaintiff was responsible for the improper administration of the nuclear material, the Hospital allegedly terminated "Plaintiff's contract." Complaint at ¶ 26.

The Complaint, however, fails to allege the existence of an actual employment agreement. Instead, Plaintiff's Complaint alleges that after the Hospital contacted him about a position as a Nuclear Technologist at the Hospital in July 2001, "an H1-B visa was arranged for him by Washington Hospital Center, and a contract of employment was signed." Complaint at ¶ 7. The Complaint makes clear, however, that the "signed contract of employment" is nothing more than the combination of Plaintiff's work visa and his Sign-on Bonus Acknowledgement. As the Complaint states, "The H1-B visa is essentially a work contract that was valid up until November 2004." Id. The Complaint adds that "the contract is silent as to term, although the Sign-on Bonus Acknowledgement requires '[plaintiff Kassem] agreeing to remain in the employment of the Hospital Center in a qualifying position for a two-year minimum period." Complaint at ¶ 8. Thus, the Complaint alleges that the combination of the H-1B visa and the Sign-on Bonus Acknowledgement constituted Plaintiff's so-called employment "contract."

The Complaint asserts in Count I that this "contract" was breached when the Hospital terminated Plaintiff for his involvement in the improper administration and handling of nuclear material. Complaint at ¶ 38. Count II of the Complaint alleges that the termination, and the events giving rise to the termination, were "extreme and outrageous" and constituted intentional infliction of emotional distress. Complaint at ¶ 53.

### III.

### LEGAL STANDARD FOR MOTION TO DISMISS

"Federal Rule of Civil Procedure 12(b)(6) culls legally deficient claims." <u>Anderson v. Local 201 Reinforcing Rodmen</u>, 886 F. Supp. 94, 95 (D.D.C. 1995). When a party moves to dismiss a complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the applicable standard of review requires the Court to accept as true all allegations of the complaint and all reasonable inferences that can be drawn therefrom and view them in the manner most favorable to the nonmoving party. <u>Scheuer v. Rhodes</u>, 416 U.S. 232 (1974). If it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim, then the complaint should be dismissed pursuant to Rule 12(b)(6). <u>Amiri v. WUSA- TV Channel 9</u>, 751 F. Supp. 211 (D.D.C. 1990), <u>aff'd</u>, 946 F.2d 1563 (D.C. Cir. 1991), <u>cert.</u> <u>denied</u>, 502 U.S. 1117 (1992). Moreover, this Court can consider a document without converting the instant motion into a motion for summary judgment where the "document is referred to in the Complaint and [is] central to Plaintiff's claim." <u>Lipton v. MCI Worldcom, Inc.</u>, 135 F. Supp. 2d 182, 186 (D.D.C. 2001).

### IV.

### ARGUMENT

**A.     Plaintiff's Breach of Contract Claim Must Be Dismissed Because There Was No Enforceable Employment Contract.**

Count I of Plaintiff's Complaint alleges a wrongful termination breach of contract claim. The Complaint, however, fails to establish an enforceable employment contract that would rebut the at-will employment presumption and allow Plaintiff to recover on a breach of contract theory.

**1. An H-1B Visa Does Not Constitute A Contract Of Employment.**

In <u>MacIntosh v. Building Owners and Managers Assoc. Internat'l</u>, 355 F. Supp. 2d 223, 229 (D.D.C. 2005), this Court definitively held that "an employer's representations to the INS during the solicitation of a visa, standing alone, do not comprise an enforceable contract." The plaintiff in <u>Macintosh,</u> like Plaintiff in the instant case, was a foreign citizen requiring a visa to work in the United States. As such, his employer made various required representations regarding the term of the plaintiff's employment to the INS in support of the plaintiff's visa application. After he was terminated, the plaintiff sued for breach of contract, arguing that his employer's representations to the INS regarding the duration of his employment constituted an employment contract.

On the defendants' motion to dismiss, this Court determined that "the only question is whether an employer's representations, when made in order to secure an employment visa for a prospective employee, constitute a contract." <u>Id.</u> Relying on the Seventh Circuit's decision in <u>Geva v. Leo Burnett Co., Inc.</u>, 931 F.2d 1220, 1223-24 (7th Cir. 1991), this Court determined that such a representation did not constitute a contract nor a promise on which one could reasonably rely. <u>MacIntosh</u>, 355 F. Supp. 2d at 229. Thus, based on the "strong presumption in favor of at-will employment and because an employer's representations to the INS during the solicitation of a visa, standing alone, do not comprise an enforceable contract," this Court granted the defendants' motion to dismiss the plaintiff's breach of contract claim for failure to state a claim.[1] <u>Id.</u>

Like the plaintiff in <u>MacIntosh</u>, Plaintiff in the instant case was a foreign citizen requiring a visa to work in the United States. In support of that visa application, the Hospital, like the

---

[1] To the extent Plaintiff claims that the actual visa constituted the work contract, the Courts in both <u>MacIntosh</u> and <u>Geva</u> were presented with factual scenarios nearly identical to Plaintiff's and neither surmised that the visa itself would ever constitute a "work contract." See <u>MacIntosh</u>, 355 F. Supp. 2d at 229; <u>Geva</u> 931 F. 2d at 1222-24.

employer in MacIntosh, made various required representations to the INS regarding the term of Plaintiff's employment, allegedly indicating that Plaintiff's employment would last until November 2004. Complaint at ¶ 7. In addition, like the plaintiff in MacIntosh, Plaintiff here does not have an actual employment agreement on which to base a breach of contract claim, but instead, has alleged that his work visa constitutes an employment contract: "the H1-B visa is essentially a work contract that was valid up until November 2004." Complaint at ¶ 7. As this Court in MacIntosh held, however, a visa is not "essentially a work contract," because "representations to the INS during the solicitation of a visa, standing alone, do not comprise an enforceable contract." MacIntosh, 355 F. Supp. 2d at 229.

      **2.    The Sign-on Bonus Acknowledgment Does Not Constitute A Contract Of Employment.**

In an apparent attempt to avoid dismissal under MacIntosh, the Complaint also references Plaintiff's Sign-on Bonus Acknowledgment. Regardless of whether this Acknowledgment is viewed by itself or in conjunction with the work visa, the Acknowledgment does not constitute an employment contract that would rebut Plaintiff's at-will status. This Court has made clear that these types of bonus arrangements do not constitute employment contracts and do not affect the at-will employment relationship in any way. See Daisley v. Riggs Bank, N.A., 372 F. Supp. 2d 61, 70 (D.D.C. 2005) ("[n]otwithstanding an at-will employment agreement, an employee and employer may still contract regarding other terms, such as bonuses or stock options"). Plaintiff's Acknowledgement is simply a separate agreement setting forth the terms of a bonus that in no way impacts his at-will status.

In Daisley, the plaintiff brought a breach of contract claim against his employer alleging he was improperly terminated in violation of his employment agreement. Like the Plaintiff in the instant case, though, the plaintiff in Daisley did not have an express employment agreement.

6

Rather, the Daisley plaintiff alleged that his offer letter and other oral assurances constituted an employment agreement. This Court disagreed, ruling that the plaintiff had "not plead facts that would show that both parties intended to alter the presumption of at-will employment," and granted the defendants' motion to dismiss the breach of contract claim. Id. at 69.

The plaintiff in Daisley, however, also had brought a breach of contract claim based on an alleged "enhanced compensation package" he was offered in what he claimed was his employment agreement. While the Court dismissed the improper termination breach of contract claim, the Court denied the motion to dismiss the breach of the compensation contract claim, stating that "[n]ot withstanding an at-will employment agreement, an employee and an employer may still contract regarding other terms, such as bonuses or stock options." Id. at 70.

Rather than "show that both parties intended to alter the presumption of at-will employment," Plaintiff's Bonus Acknowledgment in the instant case, like the plaintiff's enhanced compensation package in Daisley, is an example of an employer and employee contracting "other terms, such as bonuses or stock options" outside of and apart from their at-will employment agreement. Id. As the attached Acknowledgment clearly demonstrates, the Hospital and Plaintiff agreed to specific terms regarding the disbursement and retention of the Sign-on bonus that in no way limited or impacted either the Hospital's or Plaintiff's presumed right "to terminate an at-will employment relationship 'for any reason or no reason at all.'" Id. at 67 (quoting Wemhoff v. Investors Mgmt. Corp., 528 A.2d 1205, 1208 n.3 (D.C. 1987)); See Sign–on Bonus Acknowledgment (Ex. A).[2]

The Acknowledgment conditions Plaintiff's acceptance of the bonus on two years of continuous employment. Courts view these types of agreements as contracts "incidental or

---

[2] The Court may consider the Sign-on Bonus Acknowledgment without converting the instant motion into a motion for summary judgment because the "document is referred to in the complaint and [is] central to plaintiff's claim." Lipton v. MCI Worldcom, Inc., 135 F. Supp. 2d 182, 186 (D.D.C. 2001).

7

collateral to at-will employment," such that "an employer who offers various rewards to employees who achieve a particular result or work a certain amount of over-time, for example, may be obligated to provide those awards to qualifying employees, although retaining the right to terminate them for any or no reason." Pilkington v. CGU Insurance Co., Inc., 2001 U.S. Dist. LEXIS 3668, *22 (E.D. Penn. February 9, 2001).  Thus, the Bonus Acknowledgment merely obligated the Hospital to allow Plaintiff to retain his bonus upon completion of two years of employment without impacting in any way the at-will employment of Plaintiff.  Plaintiff's Complaint does not allege that this collateral agreement was breached.

### 3. Plaintiff Has Failed to Rebut the Presumption of At-Will Employment.

The Hospital's representations to the INS in support of Plaintiff's visa application "do not comprise an enforceable contract." MacIntosh, 355 F. Supp. 2d at 229.  Nor does a work visa comprise an enforceable contract when viewed in conjunction with Plaintiff's collateral Bonus Acknowledgment.  Neither the Acknowledgment nor the work visa provide the "evidence of clear contractual intent on the part of both the employer and the employee" that Plaintiff "must provide" in order to "rebut the presumption of at-will employment, and proceed with a cause of action for wrongful discharge under a breach of contract theory." Daisley, 372 F. Supp. 2d at 68 (quoting Lance v. UMW 1974 Pension Trust, 355 F. Supp. 2d 358, 360 (D.D.C. 2005)).  Absent this evidence of an enforceable employment contract, Plaintiff has "no remedy in contract law for his termination," as a matter of law. Daisley, 372 F. Supp. 2d at 69.  Accordingly, this Court should dismiss Count I of Plaintiff's Complaint for failure to state a claim on which relief can be granted.

B.   **Plaintiff's Intentional Infliction of Emotional Distress Claim Should Be Dismissed Because His Allegations Do Not, As A Matter of Law, Rise To The Level Of Outrageous Conduct.**

Count II of Plaintiff's Complaint, alleging intentional infliction of emotional distress, is based on the same acts giving rise to his breach of contract claim – the alleged faulty investigation resulting in the accusation that Plaintiff perpetrated the NCR violation. Under well-settled District of Columbia case law, Plaintiff's allegations fail to rise to the level of outrageousness necessary to withstand a Rule 12(b)(6) motion to dismiss. More specifically, under the District of Columbia Court of Appeals decision in Kerrigan v. Britches of Georgetowne, Inc., 705 A.2d 624, 628 (D.C. 1997), as adopted by this Court in Thompson v. Jasas Corp., 212 F. Supp. 2d 21, 28 (D.D.C. 2002) (dismissing intentional infliction claim under Rule 12(b)(6)), Plaintiff's allegations are "of the type attributable to 'employer-employee conflicts that do not, as a matter of law, rise to the level of outrageous conduct." Thompson, 212 F. Supp. 2d at 28 (quoting Kerrigan, 705 A.2d at 628). Plaintiff's intentional infliction of emotional distress should, therefore be dismissed for failure to state a claim upon which relief can be granted.

In order to recover on a claim for intentional infliction of emotional distress, Plaintiff "must demonstrate 'extreme and outrageous conduct which intentionally or recklessly cause[d] severe emotional distress." Thompson, 212 F. Supp. 2d at 27 (quoting Rogala v. District of Columbia, 161 F.3d 44, 57-58 (D.C. Cir. 1998)). Moreover, "liability will be imposed only for conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Thompson, 212 F. Supp. 2d at 27-28 (quoting Homan v. Goyal, 711 A.2d 812, 818 (D.C. 1998)). In the instant case, the conduct alleged in Plaintiff's Complaint "does not remotely

9

approach the level of severity required for a cause of action for intentional infliction of emotional distress." Dale v. Thomason, 962 F. Supp. 181, 184 (D.D.C. 1997).

In Dale, the plaintiffs, former employees of the White House Travel Office, sued the part-owners of an aviation consulting and charter firm, alleging that the defendants caused them to be fired by falsely accusing them of illegal activity. In granting the defendants' motion to dismiss, this Court ruled that "[e]ven construing all the facts in favor of plaintiffs, such conduct does not remotely approach the level of severity required for a cause of action for intentional infliction of emotional distress." Id.

The Court in Dale added that "the instances in which a claim for intentional infliction of emotional distress has been granted involve conduct of an entirely different order of magnitude." Id. at 185. In support of this statement, the Court cited numerous cases from the District of Columbia and Maryland including Clark v. Associated Retail Credit Men of Washington, 105 F.2d 62 (D.C. Cir. 1939) (collection agency hounded plaintiff with hypertension and only partial sight to collect debt and threatened suit, attachment, and garnishment); Woodner v. Breeden, 665 A.2d 929, 935-36 (D.C. 1995) (systematic efforts by workmen hired by landlords to harass and intimidate tenants, including brandishing guns), cert. denied, 117 S. Ct. 1080 (1997); Great Atlantic and Pacific Tea Co. v. Roch, 153 A. 22 (Md. 1931) (defendant grocer's employee delivered a dead rat wrapped as a loaf of bread); Bielitski v. Obadiak, 15 Sask. 153 (1922) (defendant spread rumor that plaintiff's son hung himself). In comparison to these cases, Plaintiff's allegations in the instant case, like the allegations in Dale, fall far short of the level of severity necessary to withstand a motion to dismiss.

Indeed, as the Court in Dale stated, "if the Court were to sanction the allegations in this case as viable examples of this tort [intentional infliction of emotional distress], it may be

10

expected that thousands upon thousands of employee terminations or other employment disputes in business and government would also apply." Id.  Thus, in order to avoid the expansion of this tort to "thousands upon thousands" of employment disputes, the proof required in the District of Columbia to support a claim for intentional infliction of emotional distress in the employment context  "is particularly demanding." Thompson, 212 F. Supp. 2d at 28 (quoting Lockamy v. Truesdale, 182 F. Supp. 2d 26, 38 (D.D.C. 2001)).  As demonstrated in Dale, those claims that do not meet this "particularly demanding" standard are ripe for dismissal under Rule 12(b)(6).

In Kerrigan v. Britches of Georgetowne, Inc., for example, the plaintiff claimed that his employer "targeted him for a sexual harassment investigation, manufactured evidence against him in order to establish a false claim of sexual harassment, leaked information from the investigation to other employees, and unjustifiably demoted him," causing him to ultimately quit. 705 A.2d at 628.  The trial court dismissed the plaintiff's intentional infliction of emotional distress claim on statute of limitations grounds.

On appeal, the D.C. Court of Appeals, without rejecting the trial court's rationale, affirmed the dismissal "for a different reason." Id.  Specifically, the Court of Appeals held that the conduct alleged in the plaintiff's complaint, "even construed as true, was of the type attributable to 'employer-employee conflicts [that] do not, as a matter of law, rise to the level of outrageous conduct." Id. (quoting Howard Univ. v. Best, 484 A.2d 958, 986 (D.C. 1984)). Thus, the Court of Appeals held that the plaintiff's intentional infliction of emotional distress "also failed as a matter of law." Id.

Similarly, Plaintiff's intentional infliction of emotional distress claim in the instant case should also fail as a matter of law.  Like the plaintiff in Kerrigan, Plaintiff here has alleged that he was improperly the target of an investigation "based on false accusations" (Complaint at ¶ 31)

11

in which evidence was lost and stories were uncorroborated. Complaint at ¶ 23. Substitute sexual harassment for improper administration and handling of nuclear material, and Plaintiff's allegations are essentially the same as those of the plaintiff in Kerrigan. As such, Plaintiff's allegations, "even construed as true, [are] of the type attributable to employer-employee conflicts [that] do not, as a matter of law, rise to the level of outrageous conduct." Thompson, 212 F. Supp. 2d at 28 (quoting Kerrigan, 705 A.2d at 628). Because Plaintiff's allegations fail, as a matter of law, to rise to the level of outrageous conduct, Plaintiff's intentional infliction of emotional distress claim should be dismissed for failure to state a claim upon which relief can be granted.

## V.

## CONCLUSION

Based on well-settled and controlling case law, Plaintiff's Complaint should be dismissed, in its entirety. Under MacIntosh and Daisley, Plaintiff cannot proceed with a wrongful termination breach of contract claim because Plaintiff's visa application and Bonus Acknowledgment do not, as a matter of law, create an employment contract to rebut Plaintiff's presumed at-will status. Without this evidence of an enforceable employment contract, Plaintiff has no remedy in contract law for his termination. Accordingly, Count I of Plaintiff's Complaint should be dismissed.

In addition, Count II of Plaintiff's Complaint should also be dismissed because it merely alleges conduct that is attributable to employer-employee conflicts. Under Kerrigan, as adopted by Thompson, such conduct fails, as a matter of law, to rise to the level of the extreme and outrageous conduct necessary to maintain a claim for intentional infliction of emotional distress. Therefore, Count II of Plaintiff's Complaint should also be dismissed.

                                        Respectfully submitted,

Dated: January 11, 2006                                         /s/
                                        Keith J. Harrison (D.C. Bar # 416755)
                                        Daniel M. Creekman (D.C. Bar # 488983)
                                        KING PAGANO HARRISON
                                        1730 Pennsylvania Ave, N.W., Suite 900
                                        Washington, DC 20006
                                        (202) 371-6800
                                        (202) 371-6770 (fax)

                                        Counsel for Washington Hospital Center