IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FADY KASSEM,** )<br>)<br>     **Plaintiff,** )<br>)<br>     v. )<br>)<br>)<br>**WASHINGTON HOSPITAL CENTER,** )<br>)<br>     **Defendant.** )<br>) | Case No.: 1:05CV02352 (JR) |

## REPLY TO PLAINTIFF'S REVISED SURREPLY

Based on the allegations in Plaintiff's Complaint, Plaintiff had a clear statutory remedy under Section 5851 of the ERA. Regardless of whether or not Plaintiff pursues this remedy, however, the existence of the remedy renders a wrongful termination cause of action based on a public policy exception to the at-will employment doctrine entirely nonexistent under District of Columbia law. Because the public policy on which Plaintiff bases his wrongful termination claim contains its own remedy for the exact wrong Plaintiff alleges, Plaintiff's wrongful termination claim cannot survive, and, therefore, it should be dismissed as a matter of law.

### ARGUMENT

**A.    The ERA Provides a Remedy to Plaintiff.**

There can be no question but that an administrative remedy was available to Plaintiff. First, Plaintiff was not discharged in violation of any law or regulation. He was discharged because he injected a person with radioactive material without a physician's authorization. However, assuming that the allegations of the Complaint were true, and despite Plaintiff's hedging in his Revised Surreply, the allegations in the Complaint make clear that his alleged

78779

actions are specifically protected by Section 5851. In particular, Plaintiff alleges at paragraph 35 of his Complaint that:

> Washington Hospital Center terminated Plaintiff to prevent him from fulfilling his obligations to report accurately the facts of the Dioh violation to the NRC and to retaliate against him for his attempts to exercise his civil obligation to require Washington Hospital Center to report accurately its regulatory violations to the NRC and for his refusal to engage in illegal activity by agreeing to cover up Washington Hospital Center's gross mishandling of nuclear material and incompetence of its employees and officers.

Complaint ¶35. Plaintiff is thus alleging that he was terminated in retaliation for his efforts to report to the NRC the alleged violations he perceived had been made by WHC and for his refusal to engage in illegal activity. Section 5851(a)(1)(B) specifically prohibits an employer from discharging an employee who "refus[es] to engage in any practice made unlawful by this chapter or the Atomic Energy Act of 1954, if the employee has identified the alleged illegality to the employer." 42 USC § 5851(a)(1)(B). This coincides exactly with Plaintiff's allegation that he was terminated for his refusal to "engage in illegal activity," specifically, "cover[ing] up Washington Hospital Center's gross mishandling of nuclear material and the incompetence of its employees and officers." Complaint ¶35.

Moreover, Plaintiff's claim that he was terminated in order to "prevent him from fulfilling his obligations to report accurately the facts of the Dioh violation" falls squarely within the acts protected by Section 5851(a)(1)(F), which prohibits the discharge of an employee because the employee "assisted or participated or is about to assist or participate in any manner in such a proceeding or in any other manner in such a proceeding or in any other action to carry out the purpose of this chapter or the Atomic Energy Act of 1954, as amended." 42 USC § 5851(a)(1)(F). In short, Section 5851(a)(1)(F) prohibits the discharge of an employee that "is about to assist or participate in any other action to carry out the purposes of this chapter."

2

It is clear from Plaintiff's Complaint that, if nothing else, Plaintiff claims that he was "about to assist or participate in" an NRC investigation conducted to "carry out the purposes of" the ERA by reporting "accurately the facts of the Dioh violation to the NRC." Complaint ¶35. Based on the allegations contained in his Complaint, therefore, Plaintiff's alleged actions fall squarely within those acts protected by the ERA's anti-discrimination provision. As such, Plaintiff cannot rely on the public policy exception to the at-will employment doctrine because the articulated public policy on which he relies contains its own comprehensive remedy that specifically addresses Plaintiff's allegations. See Nolting v. National Capital Group, Inc., 621 A.2d 1387, 1390 (D.C. 1993).

**B.**    **Whether Plaintiff Pursued His Administrative Remedy Is Irrelevant.**

Plaintiff states in his Revised Surreply that he did not and will not pursue his administrative remedy. The fact that Plaintiff failed to avail himself of the administrative remedy that was promulgated specifically for the type of whistle blowing for which he claims to have been discharged is irrelevant.

Under District of Columbia case law, the availability of a wrongful termination cause of action does not hinge on a Plaintiff's decision to pursue that administrative remedy. Rather, it hinges on the availability of the remedy. The fact that the ERA, the public policy underlying Plaintiff's wrongful termination cause of action, contains a remedy for Plaintiff's specific alleged wrongs means the ERA cannot, as a matter of law, form the basis of a public policy wrongful termination.

As discussed in the Hospital's reply brief, District of Columbia Courts do not recognize the tort of wrongful discharge of an at-will employee, as a general rule. In Adams v. George W. Cochran Co., Inc., 597 A.2d 28 (D.C. 1991), the D.C. Court of Appeals recognized for the first

3

time the tort of wrongful termination on the basis of public policy. In Nolting however, the Court of Appeals made clear that this public policy exception cannot exist where the public policy is articulated in a statute or regulation that provides its own remedy. In other words, under Nolting, a public policy claim is available only when the articulated public policy does not have its own comprehensive remedy. Here, because the articulated public policy has its own comprehensive remedy in Section 5851(b), no public policy claim is available.

In addition, because a wrongful termination claim cannot exist when the public policy on which it is based contains its own remedy, the nonpreemption clause of Section 5851(h) is not operative. No one is suggesting that these federal regulations fully occupy the field or otherwise pre-empt state law. Instead, the narrow Adams exception as refined by Nolting only operates in the absence of a statutory remedy. Here, because there is a statutory remedy that was available to Plaintiff, federal preemption is not at issue and the wrongful discharge claim must be dismissed.

### C.    **Whether the Statute of Limitations Has Run Is Irrelevant.**

The Hospital is not seeking dismissal on the basis of a classic failure of administrative remedies argument. Rather, the Hospital has demonstrated that, as a matter of District of Columbia law, Plaintiff's wrongful termination claim under the narrow Adams exception does not exist where there is a statutory remedy that was available to Plaintiff. Simply put, there is no cognizable wrongful discharge claim under Adams, as read with Nolting, because there was a statutory remedy available to Plaintiff. Whether Plaintiff can take advantage of that statutory remedy today, or whether Plaintiff took advantage of that remedy earlier, is irrelevant to the legal analysis required under Adams and Nolting.

The Court in Nolting did not base its decision on an exhaustion of remedies theory. Indeed, an exhaustion of remedies theory would require a plaintiff to first pursue an

4

administrative remedy before bringing a civil action in court. Rather, the Court in Nolting was defining the parameters of a newly created cause of action. Prior to Adams, there was no cause of action for wrongful termination of an at-will employee. In Adams, the Court created the wrongful termination claim when an at-will employee is terminated in violation of a public policy. The Court in Nolting refined the breadth of this exception to the general rule refusing to recognize a wrongful termination claim of an at-will employee by holding that a termination in violation of an articulated public policy may serve as the basis of a wrongful termination claim only when the public policy does not carry its own remedy. In order to uphold the well-established doctrine of at-will employment and ensure that the doctrine was not swallowed by the exception, the Court in Nolting defined the wrongful termination claim to exist only when there is no other remedy available. Thus, because the ERA contains its own remedy, regardless of whether that remedy is mandatory or permissive, a claim for wrongful termination based on violations of the ERA cannot exist under Nolting.

## CONCLUSION

The ERA contains a whistleblower protection/nondiscrimination provision. Plaintiff's allegations fall squarely within the parameters of this provision. Regardless of whether Plaintiff pursued this administrative remedy in the past or is able to pursue it in the future, its existence prevents Plaintiff from pursuing a claim in this Court for wrongful termination under the Adams exception when read in light of Nolting. Accordingly, Plaintiff's claim should be dismissed, with prejudice, for failure to state a claim upon when relief can be granted.

                Respectfully submitted,

Dated: March 31, 2006

                /s/
                Keith J. Harrison (D.C. Bar # 416755)
                Daniel M. Creekman (D.C. Bar # 488983)
                KING PAGANO HARRISON
                1730 Pennsylvania Ave, N.W., Suite 900
                Washington, DC 20006
                (202) 371-6800
                (202) 371-6770 (fax)

                Counsel for Washington Hospital Center