```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


FADY KASSEM,                       :
                                   :
        Plaintiff,                 :
                                   :
    v.                             :  Civil Action No. 05-2352 (JR)
                                   :
WASHINGTON HOSPITAL CENTER,        :
                                   :
        Defendant.                 :
```

## MEMORANDUM

Plaintiff Fady Kassem sues Washington Hospital Center (WHC) for wrongful termination[1] and intentional infliction of emotional distress.  WHC moves to dismiss both counts for failure to state a claim on which relief can be granted.  That motion will be granted, and both counts of the complaint will be dismissed.

## Background

Fady Kassem was employed by WHC as a nuclear medicine technologist.  Complaint at 2.  On July 20, 2003, another nuclear technician, Lawrence Dioh, was injected with radioactive material without the knowledge or approval of a physician and in violation of regulations promulgated by the Nuclear Regulatory Commission (NRC).  Id. at 5.  This incident sparked an internal

---

[1] Kassem initially styled his complaint as a breach of contract action, asserting that the HB-1 work visa obtained by WCH on his behalf functioned as a contract of employment.  He appeared to abandon this position in his opposition to this motion to dismiss, however, and now casts his complaint as a wrongful termination suit.  I will address it as such.

investigation within WHC that Kassem alleges was a sham. Id. He alleges that the hospital made him a scapegoat of the investigation because he had conscientiously reported numerous NRC violations to his superiors, about technologists who came to work drunk, mishandled diagnostic procedures, and verbally abused patients; equipment malfunctions; computer network failures; poor safety and emergency documentation; poor quality control; and unsecured passages to nuclear material. Id. at 4-5. According to Kassem, WHC was more interested in making money than resolving these regulatory infractions and told him that, if he said "what they wanted to hear to make the investigation complete, then he would be able to save his visa and his livelihood and wouldn't be kicked out of the country." Id. at 5. Kassem refused to go along with what he describes as WHC's coverup of the Dioh injection incident, and, on August 15, 2003, he was fired. According to the complaint, WHC reported misconduct by Kassem to the NRC, but the NRC dismissed charges of wrongdoing against Kassem on January 7, 2005, and initiated regulatory proceedings against WHC. Id. at 6.

## Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). A court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond

doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Warren v. District of Columbia, 353 F.3d 36, 37 (D.C. Cir. 2004). In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations, including mixed questions of law and fact, as true, drawing all reasonable inferences in the plaintiff's favor. Macharia v. United States, 334 F.3d 61, 64, 67 (D.C. Cir. 2003), cert. denied, 540 U.S. 1149 (2004).

## Analysis

**1.  Wrongful discharge**

As a general rule, District of Columbia courts do not recognize a tort of wrongful discharge of an at-will employee. See Adams v. George W. Cochran & Co., Inc., 597 A.2d 28, 30 (D.C. 1991) ("[A]n employer may discharge an at-will employee at any time and for any reason, or for no reason at all.")  One exception to this rule, however, is when the "sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." Id. at 34.

Kassem alleges that he was fired to prevent his reporting the facts of the Dioh injection to the NRC; in retaliation for his urging WHC to report its NRC violations; and for his refusal to engage in illegal activity by agreeing to cover up WHC's mistakes. Complaint at 7. These reasons, if true, would constitute flagrant violations of public policy and

would fall within the Adams exception.  The Adams exception is itself limited, however, when "the very statute creating the relied-upon public policy already contains a specific and significant remedy for the party aggrieved by its violation." Nolting v. National Capital Group, Inc., 621 A.2d 1387, 1390 (D.C. 1993).  In such a case, plaintiffs may not "eschew the administrative remedy and instead obtain recovery against the employer on a tort theory of wrongful discharge under the narrow 'public policy' exception to the employment-at-will doctrine recognized by this Court."  Id. at 1387.

Nolting governs the present case.  The Energy Reorganization Act ("ERA"), 42 U.S.C. § 5801 et. seq., created the NRC and serves as the statutory basis for the public policy invoked by Kassem.  It contains a "Nuclear Whistleblower Protection" provision, 42 U.S.C § 5851, that specifically addresses the situation he faced.  That provision states:

> No employer may discharge any employee...because the employee...(a) notified his employer of an alleged violation of this Act or the Atomic Energy Act of 1954; [or] (b) Refused to engage in any practice made unlawful by this Act or the Atomic Energy Act of 1954, if the employee has identified the alleged illegality to the employer.

42 U.S.C.A. § 5851(a)(1)(A)-(B).  The ERA also provides an administrative remedy for any employee who believes he has been discharged in violation of the provision.  Specifically, the ERA provides that:

- 4 -

> [A]ny employee who believes that he has been
> discharged or otherwise discriminated against
> by the person in violation of subsection (a)
> may within 180 days after such violation
> occurs, file...a complaint with the Secretary
> of Labor...alleging such discharge or
> discrimination;
>
> If, after an investigation, the Secretary of
> Labor determines that a violation has
> occurred, the Secretary shall order the
> person who committed such violation to
> (I) take affirmative action to abate the
> violation, and (ii) reinstate the complainant
> to his former position together with
> compensation (including back pay), terms,
> conditions, and privileges of his employment,
> and the Secretary of Labor may order such
> person to provide compensatory damages to the
> complainant.

42 U.S.C. § 5851 (b)(1), 42 U.S.C. § 5851(b)(2)(B).  Because the ERA both establishes the NRC's authority and creates an administrative remedy for employees discharged for refusing to violate that authority, Kassem cannot invoke the Adams exception to the at-will employment doctrine as an alternative to that statutory remedy.

**2. Intentional infliction of emotional distress (IIED)**

A defendant is liable for intentional infliction of emotional distress only if he or she engages in (1) "extreme or outrageous conduct" which (2) "intentionally or recklessly" causes (3) "severe emotional distress to another." Bernstein v. Fernandez, 649 A.2d 1064, 1075 (D.C. 1991).  To establish the required degree of "outrageousness," the plaintiff must allege conduct "so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (quoting Restatement (Second) of Torts § 46 (1965)).

District of Columbia courts have been loath to find this degree of outrageousness in the employment context. See Howard Univ. v. Best, 484 A.2d 958, 986 (D.C. 1984) ("[T]ypical employer-employee conflicts do not, as a matter of law, rise to the level of outrageous conduct."). In a case very similar to these facts, for example, the D.C. Court of Appeals concluded as a matter of law that the plaintiff had failed to state a claim for IIED despite alleging that his boss "targeted him for a sexual harassment investigation, manufactured evidence against him in order to establish a false claim of sexual harassment, leaked information from the investigation to other employees, and unjustifiably demoted him to the position of store manager in order to promote a woman to his position." Kerrigan v. Britches of Georgetowne, Inc., 705 A.2d 624, 628 (D.C. 1997). On the other hand, there have been occasions when plaintiffs have successfully pled IIED claims in the workplace context. In Best, for example, the court rejected an IIED claim based on a supervisor's interference with

professional responsibilities, but upheld an IIED claim based on the same supervisor's sexual harassment of the plaintiff, which involved inappropriately touching the plaintiff, repeatedly propositioning her, and making vulgar comments about her to others.  484 A.2d at 986.  And in Larijani v. Georgetown University, 791 A.2d 41, 43 (D.C. 2002), the court found a well-pled (though hardly believable) IIED claim based on allegations that the plaintiff's co-workers placed piercing, droning noise-makers outside her door for nine months, producing "severe headaches, chills, nausea, vomiting, a swollen eye, involuntary body tremors, nightmares, cold sweats, hysteria, tension, muscular pain, shoulder pain, backaches, hyperventilation, fear, anger, depression, loss of appetite, loss of sleep, anxiety, stress, humiliation, indignity, disgrace, a traumatized psyche, and extreme emotional distress."

   Divining applicable principles from these cases is difficult, but I am inclined to agree with a distinction between cases like Kerrigan and Best suggested by Chief Judge Hogan in Wade v. Washington Metropolitan Area Transit Authority, 2005 WL 1513137, *6 (D.D.C. 2005).  In Wade, C.J. Hogan emphasized the personal, sexual, and physical nature of the harassment in Best, versus the purely occupational

threat that occurred in <u>Kerrigan</u>, even though it proceeded under the rubric of a sexual harassment investigation. In other words, <u>Best</u> and <u>Wade</u> suffered the threat of physical and sexual violation, while <u>Kerrigan</u> never faced more than the loss of his job and damage to his professional reputation. This distinction makes sense, because sexually- and physically-threatening behavior should not receive a cloak of protection just because it occurs in the workplace. But occupational-focused behavior, even when personally exploitive and vindictive, is limited to its context and does not pose the same physical and psychological threat as these other forms of abuse. Of course, this also explains the success of <u>Larijani</u>'s complaint against the noise-making co-workers.

Applying this distinction, it is clear that even accepting all of the allegations in Kassem's complaint as true, he has not, as a matter of law, stated a claim for IIED against Washington Hospital Center. The motive he ascribes to WHC -- a desire to expunge a mettlesome employee and cover up regulatory infractions -- and the methods he alleges -- threats of discharge, revocation of the HB-1 visa, and a conjured investigation with manufactured evidence -- all revolve around purely occupational concerns with purely occupational consequences. And, while it would

be unwise to conclude that <u>no</u> plaintiff could ever state a claim for IIED based on purely occupational behavior, the facts in this case parallel those in <u>Kerrigan</u> so closely that describing one and not the other as outrageous makes no sense as a matter of law.

## Conclusion

For the foregoing reasons, defendant's motion to dismiss for failure to state a claim upon which relief can be granted [3] is **granted**. An appropriate order accompanies this memorandum.


                              JAMES ROBERTSON
                          United States District Judge